IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

*In re:*

TIMOTHY WAYNE TARVER,

*Debtor.*

Case No.: 20-12219-JCO
Chapter 13

## **MEMORANDUM ORDER AND OPINION**

This matter came before the court on the Objection to Confirmation filed by Susan Davis and the Objection of the Debtor, Timothy Tarver, to Susan Davis' Proof of Claim together with the amendments and responses thereto. (Docs. 40, 41, 42, 43, 50, 119). Upon consideration of the record, pleadings, briefs, and exhibits, this court finds that Tarver's Objection to Davis' Claim is due to be OVERRULED IN PART and SUSTAINED IN PART, with the claim allowed as unsecured pending further adjudication; and that confirmation of Tarver's plan is due to be DENIED for the reasons set forth below:

### JURISDICTION

This court has jurisdiction to hear this matter pursuant to 28 U.S.C. §§157 and 1334 and the Order of Reference of the District Court dated August 25, 2015.

1

PROCEDURAL BACKGROUND AND FINDINGS OF FACT

The Debtor, Timothy Wayne Tarver ("Tarver") filed this Chapter 13 bankruptcy on September 21, 2020. (Doc. 1). His Petition listed only four creditors: one secured by a mortgage, two secured by vehicles, and his ex-wife, Susan Davis ("Davis"), formerly known as Susan Tarver. Tarver is an above median income debtor.(Doc. 28 at 16). He has regular monthly income from several sources including: $12,796.25 in gross wages from employment, $1,300.00 in rental income, $3,389.00 in VA disability, and $1,700.00 in other retirement.(Doc.18 at 36). His monthly expenses total $5,626.00 including a $906.00 vehicle payment for an Infiniti Q60 which he purchased for $65,278.61 on August 24, 2020. (Doc. 28 at 18; ECF Claim 2-1). Although his schedules reflect monthly disposable income of $7,224.40[1], his plan proposes monthly payments to the Trustee of only $586.01. (Docs. 28 at 18, 31 at 2). His plan does not provide for any payments to Davis.

Tarver was married to Davis for more than ten years. (Doc. 40-1 at 11). The two were divorced on June 11, 2012 by Final Decree of Divorce ("Divorce Decree") entered by the Circuit Court of Elmore County, Alabama ("Domestic Court").(Doc. 40-3 at 4). The Divorce Decree incorporated a Marital Settlement Agreement ("Agreement") executed by both Tarver and Davis on May 11, 2012.(*Id.*) The Agreement reflects that Tarver and Davis each had independent counsel and affixed their signatures voluntarily in the presence of a notary public. (Doc. 40-1, 13-17). The Agreement provides in part for Davis to receive " . . . 50% of [Tarver's] Air Force retirement and 50% of the disability monies . . ." (Doc 40-1 at 11 ¶14) . When Tarver failed to assign the VA benefits the Domestic Court ordered Tarver to pay half of "any amounts [he] received in lieu of

---

[1] Tarver's schedules reflect that his $7,224.40 net disposable income includes deductions for his monthly expenses including a voluntary retirement contribution of $581.97 per month and a $269.21 per month retirement loan. (Doc 28,15-18).

2

disposable retired pay . . ." ("Court Ordered Payments"). (40-3 at 4)(*citing* No. DR-362.00, Doc. #156 ¶15.)

Tarver's subsequent refusal to remit the Court Ordered Payments to Davis prompted an avalanche of litigation, beginning with the first contempt proceeding filed by Davis in the Domestic Court. (Doc. 40-3 at 4*).* Although Tarver argued that the state court lacked jurisdiction to divide his VA disability benefits under federal law, the Domestic Court remained resolute in its holding that Davis was entitled to the Court Ordered Payments and entered a contempt order for his failure to comply. (Doc 40-3. at 5). Upon Tarver's appeal, the Alabama Court of Civil Appeals affirmed the Domestic Court's Order and the Supreme Court of Alabama denied certiorari.[2]

Thereafter, Tarver's continued refusal to pay Davis the Court Ordered Payments led her to file a second petition for contempt. (*Id.*) In addition to making the same argument that he could not be required to remit his VA disability; Tarver also removed the contempt proceeding to federal court. (*Id.*) After the federal court remanded for lack of jurisdiction, Tarver instituted another federal action against Davis which was also dismissed for the same reason. (*Id.* at 4-5). The Domestic Court then held Tarver in contempt, entered a $27,853.00 judgment against him, and ordered him to make all future payments to Davis. (Doc. 40-3 at 6; Doc 50-5). Tarver appealed the contempt judgment to the Alabama Court of Civil Appeals. While that appeal was pending, Tarver's bank account was garnished by the Circuit Court of Geneva County at Davis' request. (Docs. 40-3 at 6, 50-6 at 3 ¶¶15,16). Upon Tarver's motion to stay the garnishment, the Domestic Court entered an order allowing release of the garnished funds to Tarver once he posted a supersedeas bond. (Doc. 40-3 at 7). After the Alabama Court of Civil Appeal's affirmance of the

---

[2] See *Tarver v. Tarver*, 194 So. 3d 1000 (Ala Ct. App. 2014) and *Ex parte Tarver*, 210 S. 3d 1101 (Ala. 2015).

3

Domestic Court and the Alabama Supreme Court's denial of certiorari, the Domestic Court ordered that Davis was entitled to receive the supersedeas bond funds. (*Id.;* Doc. 135 at 14*).*

Davis later filed a third contempt action alleging that Tarver refused to abide by the Domestic Court's Orders and that by methods of trickery and deceit Tarver had taken the supersedeas bond funds from the courthouse. (*Id.*) The day prior to the initial setting on the third contempt petition, Tarver filed suit against the Domestic Court Judge, the Honorable Sibley Reynolds. The Eleventh Circuit Opinion dismissing Tarver's claims against Judge Reynolds stated in part that ". . . to the extent, [Tarver] seeks to relitigate the state court orders requiring him to pay half of his VA disability benefits to [Davis] he cannot do so in federal court. He has already appealed those orders in state court — twice. He cannot try again here." *Tarver v. Reynolds,* 2019 WL 3889721 at 9 (M.D. Ala. Aug. 16, 2019), aff'd, 808 F. App'x 752 (11th Cir. 2020).

After 8½ years of litigation, Tarver's attempts to renege on the Agreement and avoid the orders of the Domestic Court had proven futile. Yet on September 1, 2020, Tarver initiated a new action by filing a complaint in the U.S. District Court for the Middle District of Alabama seeking a declaratory judgment and injunctive relief ("Declaratory Judgment Action") to prevent Davis from making any claim to his disability benefits under the Divorce Decree. (Doc. 127-1). Despite the filing of the Declaratory Judgment Action, Tarver's continued failure to comply with the orders of the Domestic Court led to the issuance of a "Third Contempt Order" which states in part,

> Mr. Tarver having received all the bond funds from the Clerk when requested to return the funds and he did not return the money sent to him in error.
> Mr. Tarver last paid funds to Mrs. Tarver in September 2018.
>
> ORDERED
> 1. That Mr. Tarver has the ability to pay his agreed settlement, monthly and has failed.
> 2. That he is found to be in contempt and placed into custody, pending payment of the purger amount of $92,569.66.

3. Attorneys fees of $7500.00 taxed to Mr. Tarver for the attorney bringing this Contempt Action.

(Doc. 40-2).

The Third Contempt Order was the impetus for Tarver's filing of this Chapter 13 bankruptcy in which he listed Davis' claim as his only unsecured debt.(Docs.1, 18 at 31,125 at 1). Davis' proof of claim is based on the Third Contempt Order attached thereto.(ECF Claim 4-1). The administration of this bankruptcy was delayed for a ruling on Tarver's then pending Declaratory Judgment Action. Recognizing such delay could be detrimental to creditors and the future feasibility of the case, this court directed Tarver to increase his chapter 13 plan payments to the amount necessary to pay Davis' claim in the event he obtained an adverse ruling.[3] After the District Court's dismissal of Tarver's Declaratory Judgment action, this court held a hearing on April 28, 2022 at which Tarver advised that the matter was on appeal to the Eleventh Circuit. Tarver further represented to this court at that hearing that if his appeal was unsuccessful, he would not be seeking return of the funds paid into the court for payment of Davis' claim. Ultimately, the Eleventh Circuit affirmed the decision of the District Court and dismissed the Declaratory Judgment Action.(Doc. 135 at 5-11)(holding that it lacked jurisdiction under the *Rooker-Feldman* Doctrine). Thus, the orders of the Domestic Court have not been altered, amended, or vacated.

This court has before it Davis' Amended Objection to Confirmation and Tarver's Objection to Davis' Proof of Claim. (Docs. 119, 41). Davis asserts that Tarver's plan does not meet the requirements for confirmation, was not proposed in good faith, and does not adequately provide for her claim or protect her interest. Tarver's Objection to Davis' $101,891.24 proof of claim

---

[3] At the July 29, 2021 setting Tarver was directed to remit $2,725.00 per month based on calculations at that time. At the next setting December 2, 2021, the Debtor was directed to increase the amount to $2,785.00 per month based on the Trustee's advisement of the amount needed.

5

Case 20-12219  Doc 138  Filed 02/13/23  Entered 02/13/23 16:07:52  Desc Main
Document     Page 5 of 17

contends that it should be reduced to an unsecured claim in the amount of $7,500.00[4] because the Domestic Court Orders are void and the basis of Davis' claim is a property settlement. As both contested matters relate to the enforceability of the Divorce Decree which incorporates the Agreement, and the Eleventh Circuit has now issued its opinion leaving the Domestic Court Order intact, these matters are now ripe for adjudication.

## ANALYSIS

### *Applicability of The Rooker-Feldman Doctrine*

Since the crux of the pending disputes between the parties has already been extensively litigated in both state and federal courts, re-litigating the same issue in this court is not necessary or appropriate. The prior rulings of the United States District Court and the Eleventh Circuit have repeatedly held that the *Rooker-Feldman* Doctrine ("*Rooker-Feldman*") prohibits Tarver's collateral attack of the Divorce Decree. *See Tarver v. Tarver*, 2022 WL 4372439 (11th Cir. 2022); *Tarver v. Reynolds*, 2019 WL 3889721 (M.D. Ala. Aug. 16, 2019), aff'd, 808 F. App'x 752 (11th Cir. 2020). Under *Rooker–Feldman*, review of state court judgments may only be had by the state appellate courts and the United States Supreme Court. *Dist. of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 482, 103 S.Ct. 1303, 1315, 75 L.Ed.2d 206 (1983). The doctrine has two statutory bases: (1) 28 U.S.C. §1257, which limits federal review of state court proceedings to the United States Supreme Court, and (2) 28 U.S.C. §1331, which provides that federal district courts are courts of original jurisdiction. *Casale v. Tillman*, 558 F 3d 1258 (11th Cir. 2009)(citing *Rooker v. Fidelity Tr. Co.,* 263 U.S. 413, 415–16, 44 S.Ct. 149, 150, 68 L.Ed. 362 (1923)). The doctrine applies not only to claims raised in the state court, but also to claims that were not raised in the state court but are inextricably intertwined with the state court's judgment. *Powell v. Powell*, 80

---

[4] $7,500.00 is the attorney fee amount awarded in the Third Contempt Order.

F.3d 464 (11th Cir.1996)(explaining that *Rooker-Feldman* still applies even when the federal court collateral attack on the state court judgment is premised on the unconstitutionality of a federal statute).

Simply put, *Rooker-Feldman* prevents lower federal courts from re-adjudicating matters that were previously litigated by the same parties in state court. It applies when three criteria exist: (1) the party against whom the doctrine is invoked was a party to the prior state-court judgment; (2) the claim raised in the federal suit was raised or is inextricably intertwined with the state-court judgment; and (3) the federal claim is not parallel to the state-court claim. *See Peter C. Alexander, Bankruptcy, Divorce, and the Rooker-Feldman Doctrine: A Potential Marriage of Convenience, 13 J. L. & Fam. Stud. 81*, 108 (2011). Here, both the U.S. District Court for the Middle District of Alabama ("District Court") and the Eleventh Circuit Court of Appeals ("Eleventh Circuit") have already determined that Tarver's contest of the Divorce Decree falls within the parameters of *Rooker-Feldman.* In its Opinion dismissing Tarver's Declaratory Judgment Action, the Eleventh Circuit explained that,

> Tarver's lawsuit falls within the narrow purview of *Rooker-Feldman*. He sought a declaration that "the state's conduct violates 38 U.S.C. § 5301," an order enjoining Susan from any further attempt to enforce the decree, and reimbursement of the payments already made. Each of these requests relies on the same essential claim: that the state courts have violated controlling federal law and acted without jurisdiction by enforcing the negotiated division of his VA disability benefits at divorce. Before filing his complaint in this case, Tarver repeatedly made that same claim in state court, but the trial court repeatedly rejected it and confirmed his obligation to pay, and Alabama's appellate courts repeatedly affirmed the trial court's rulings. *Tarver*, 808 F. App'x at 754.
> Because Tarver is a "losing state court litigant" who in substance "calls on a district court to modify or overturn an injurious state-court judgment," his complaint is subject to dismissal under *Rooker-Feldman*. *See Behr*, 8 F.4th at 1210–11 ("[A]ppeals of state court judgments are barred under *Rooker-Feldman*, no matter how the claims are styled."). Tarver's injuries were caused by state-court rulings. Id. at 1212 ("The injury must be caused by the judgment itself. Period."). And he invites federal court "review and rejection" of those rulings by seeking declaratory and injunctive relief that would nullify the state court's judgment that Susan is to receive a portion of his disability benefits. *See id.*; *Powell v. Powell*, 80

7

> F.3d 464, 467 (11th Cir. 1996) (holding that *Rooker-Feldman* barred review of a veteran's constitutional claim because granting him relief would "would effectively nullify the state court's judgment that [his former spouse] is to receive a portion of his naval retirement pay" (quotation marks omitted)).

*Tarver v. Tarver*, 2022 WL 4372439, at 2 (11th Cir. 2022).

The holdings of the District Court and Eleventh Circuit, dismissing Tarver's attempted collateral attack of the state court judgment for lack of jurisdiction under *Rooker-Feldman,* apply to the matters before this court. The jurisdiction of bankruptcy courts, "like that of other federal courts, is grounded in, and limited by statute." *Celotex Corporation v. Edwards*, 514 U.S. 300, 307, 115 S.Ct. 1493, 131 L.Ed.2d 403 (1995); *see also In re Munford*, 97 F.3d 449, 453 (11th Cir.1996). Bankruptcy courts derive their authority from the order of reference of the district court, permitting them to hear and determine all cases under Title 11 and all core proceedings arising under Title 11 or arising in a case under Title 11. *11 U.S.C.§157 and §1334*. Although bankruptcy courts are empowered to avoid, modify, and even discharge state court judgments in certain statutorily prescribed instances, *Rooker-Feldman* remains otherwise applicable in bankruptcy proceedings. *See In re Wilson*, 116 F.3d 87, 90 (3d Cir.1997)(recognizing that bankruptcy courts are prohibited under *Rooker-Feldman* from serving as courts of appeals for state court judgments); *In re Cass*, 2019 WL 7667445(Bankr. S.D. Ala.2019)(noting that only the U.S. Supreme Court has appellate jurisdiction over judgments of state courts in civil cases); *In re Clarke*, 373 B.R. 769, 771 (Bankr. S.D. Fla. 2006)(explaining that although *Rooker-Feldman* applies to bankruptcy proceedings, it is not implicated by changes to the automatic stay in bankruptcy); *In re Al-Sedah*, 347 B.R. 901, 904 (Bankr. N.D. Ala. 2005)("The *Rooker-Feldman* Doctrine is applicable in bankruptcy proceedings"). Further, it is not the role of the bankruptcy court to duplicate the functions of state domestic relations courts and its rulings should impinge on state domestic

relations issues in the most limited manner possible. *In re Williford*, 294 F. App'x 518, 521–22 (11th Cir. 2008)(*citing In re Harrell*, 754 F.2d 902, 907 (11th Cir.1985)).

Applicability of *Rooker-Feldman* prevents this court from re-litigating, altering, or otherwise amending the Divorce Decree entered by the Domestic Court. The decade long effort that Tarver has made to try to renege on the Agreement is astonishing. Nonetheless, his repeated efforts have failed. Tarver was a party to the state court proceeding, the state court injury he complains of was raised previously and is inextricably intertwined with the state court's judgment, and the Divorce Decree was entered before this bankruptcy. As a result, this court is not empowered or inclined to entertain the same arguments already presented to the state and federal courts. Consistent with the rulings of the District Court and the Eleventh Circuit, this court finds that *Rooker-Feldman* prevents it from considering Tarver's contest of the Divorce Decree. It is within this framework, that this court considers the matters now before it.

*Tarver's Objection to Davis' Claim*

A properly filed proof of claim constitutes prima facie evidence of both the validity and amount of the claim. *Fed. R. Bankr.Proc. 3001(f)*. Thus, an objecting party bears the burden of producing evidence sufficient to overcome the claimant's prima facie case. *In re Watson,* 606 Fed Appx 543 (11th Cir. 2015); *In re Barron*, 325 B.R. 17, 20 (Bankr. M.D. Ala. 2005); 9 *Collier on Bankruptcy* ¶ 3001.09[2] (16th ed.2015).

The Bankruptcy Code provides that certain claims, including domestic support obligations are entitled to priority treatment. 11 U.S.C. 507(a)(1)(A). The term "domestic support obligation" is defined as a debt owed to a former spouse of the debtor that is "in the nature of alimony, maintenance, or support ... of such former spouse, ... without regard to whether such debt is expressly so designated [.]" 11 U.S.C. § 101(14A)(B). Bankruptcy courts are not bound by labels placed on marital settlement awards because it is unlikely that the parties or the divorce court

9
Case 20-12219    Doc 138    Filed 02/13/23    Entered 02/13/23 16:07:52    Desc Main
Document      Page 9 of 17

contemplated the effect of a subsequent bankruptcy when the obligation arose. *Cummings v. Cummings*, 244 F.3d 1263, 1265 (11th Cir.2001); *In re Strickland*, 90 F.3d 444, 446 (11th Cir.1996); *In re Harrell*, 754 F.2d 902, 904 (11th Cir.1985). Although whether a "domestic support obligation" is of a kind that is not dischargeable is a matter of federal law; state courts and bankruptcy courts have concurrent jurisdiction to make that determination. *In re Zhuk*, 576 B.R. 723 (Bankr. S.D. Fla. 2017)(*citing Cummings* at 1267). Additionally, bankruptcy courts have broad discretion to permissively abstain from hearing a proceeding, "in the interest of justice, or in the interest of comity with State courts or respect for State law." 28 U.S.C. §1334 (c)(1). The Eleventh Circuit has cautioned bankruptcy courts not to embroil themselves in family law matters. *Carver v. Carver*, 954 F.2d 1573, 1578–79 (11th Cir. 1992).

Although Tarver contends that *Rooker-Feldman* is inapplicable in bankruptcy courts, such blanket assertion is without merit. While bankruptcy courts are empowered in certain statutorily prescribed instances to avoid, modify, and discharge judgments[5] as well as address matters related to the automatic stay, such authority does not permit bankruptcy courts to serve as appellate courts for disgruntled state court litigants. Absent certain specific statutory provisions applicable to bankruptcy proceedings, state court judgments are entitled to Full Faith and Credit in bankruptcy court. 28 U.S.C.§1738. The authorities that Tarver cites in support of his argument to the contrary are misconstrued, distinguishable, or otherwise inapplicable to this case. *e.g. In re Long*, 564 B.R. 750(Bankr. S.D. Ala. 2017)(simply concluding that *Rooker-Feldman* does not bar a bankruptcy court from reviewing a state court determination of whether the automatic stay applies); *In re Winraub*, 361 B.R. 586 (Bankr. S. D. Fla. 2007)(addressing the bankruptcy court's equitable powers pertaining to 11 U.S.C §362 and finding that TILA claims were not barred under *Rooker-*

---

[5] See, e.g. 11 U.S.C. §§ 544, 547, 548, 549 1129, 1325; 727, 1141, 1328

*Feldman* because they were separate and distinct from the state court eviction proceedings); *In re Gruntz*, 202 F.3d 1074 (9th Cir. 2002)(explaining the bankruptcy court's enforcement of the automatic stay from its own federal authority does not constitute an improper appellate review of a state court judgment and *Rooker–Feldman* is often extended to pre-petition state judgments as to identical issues raised in subsequent bankruptcy proceedings).

Here, Davis' counsel timely filed her fully completed and properly executed proof of claim substantiated by a copy of the Third Contempt Order. This court finds that such filing constitutes prima facie evidence of the amount and validity thereof. Hence, the burden shifts to Tarver to overcome such showing. He objected to Davis' Claim on two grounds: (1) the Domestic Court Order is invalid; and (2) Davis' claim is not entitled to priority treatment. As explained above, Tarver's first argument, seeking to invalidate the Divorce Decree, has been repeatedly disposed of by the higher courts and thus is misplaced here. Despite Tarver's echoing refrain that the award of VA disability benefits originating from his initial Agreement is invalid, the Third Contempt Order does not mention VA Disability benefits or require that the payment of the judgment be made from VA disability funds. It simply orders Tarver to pay Davis (and her counsel) a sum certain. (Doc. 40-2). The order reflects the court's findings that Tarver has not paid Davis since 2018 and refused to return the funds from the supersedeas bond that he improperly received. (*Id.*) Therefore, not only does *Rooker-Feldman* prohibit this court from re-adjudicating the Divorce Decree, but even if it did not, Tarver has not otherwise rebutted the presumption afforded to Davis' unsecured claim based on the pre-petition state court judgment she obtained against him.

Notwithstanding the foregoing, Tarver's objection *is* sufficient to rebut the priority status of Davis' claim at this juncture. The Third Contempt Order does not contain an itemization or any specific findings to explain whether such award is an obligation "in the nature of alimony, maintenance, or support." Thus, such determination will require additional fact specific

11

proceedings or a clarification from the Domestic Court. Although this court can make such determinations under the rationale of *In re Cummings*, it is also mindful of the 11th Circuit's directive that bankruptcy courts are not to impinge on state court adjudication generally, and to specifically not embroil themselves in family law matters. Considering the extensive pre-petition litigation of this matter, this court believes that the Domestic Court is undoubtably more versed on the pertinent facts and the intent of its prior holdings. Thus, further adjudication or clarification of the Third Contempt Order would be more appropriate and more efficiently resolved in Domestic Court. Further, as this court has allowed Tarver the opportunity to pursue his previously pending action and appeal, it will now allow Davis the opportunity to seek clarification from the Domestic Courtin order to satisfy her burden of establishing that her claim is entitled to priority treatment. In the interim, as the uncertainty about the priority status of Davis' claim does not invalidate the claim entirely, this court finds that Davis' claim shall be allowed as unsecured in the amount of $101,891.24 unless there is a further determination that priority treatment is appropriate.

*Davis' Objection to Confirmation*

The principal purpose of the Bankruptcy Code is to grant a "fresh start" to the "honest but unfortunate debtor." *Marrama v. Citizens Bank of Mass.*, 549 U.S. 365, 367, 127 S.Ct. 1105, 166 L.Ed.2d 956 (2007) (*quoting Grogan v. Garner*, 498 U.S. 279, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991)). This premise is evident in the requirements for confirmation of a chapter 13 plan set out in Section 1325 including that:

> (1) The plan complies with the provisions of this chapter and with the other applicable provisions of this title;
> 
> . . .
> 
> (3) the plan has been proposed in good faith and not by any means forbidden by law;

12

(4) the value, as of the effective date of the plan, of property to be distributed under the plan on account of each allowed unsecured claim is not less than the amount that would be paid on such claim if the estate of the debtor were liquidated under chapter 7 of this title on such date;
. . .
(7) the action of the debtor in filing the petition was in good faith; . . .
(8) the debtor has paid all amounts that are required to be paid under a domestic support obligation and that first become payable after the date of the filing of the petition if the debtor is required by a judicial or administrative order, or by statute, to pay such domestic support obligation; and
. . .
(b)(1) If the trustee or the holder of an allowed unsecured claim objects to the confirmation of the plan, then the court may not approve the plan unless, as of the effective date of the plan--
(A) the value of the property to be distributed under the plan on account of such claim is not less than the amount of such claim; or
(B) the plan provides that all of the debtor's projected disposable income to be received in the applicable commitment period beginning on the date that the first payment is due under the plan will be applied to make payments to unsecured creditors under the plan.

11 U.S.C. §1325.

The plain statutory language of 11 U.S.C. §1325 (3) and (7) reflects the importance of good faith, or lack thereof in the bankruptcy process. Bankruptcy courts evaluate bad-faith on a case-by-case basis and a "totality of the circumstances test" is often applied. *In re McGovern*, 297 B.R. 650 (S.D. Fla. 2003); *Bunyan v. Remick*, No. 2019 WL 4805428 (M.D. Fla. Oct. 1, 2019). Courts in the Eleventh Circuit consider various factors in making such determination including: (1) the amount of the debtor's income from all sources; (2) the living expenses of the debtor and his dependents; (3) the amount of attorney's fees; (4) the probable or expected duration of the debtor's Chapter 13 plan; (5) the motivations of the debtor and his sincerity in seeking relief under Chapter 13;(6) the debtor's degree of effort; (7) the debtor's ability to earn and the likelihood of fluctuation in his earnings;(8) special circumstances such as inordinate medical expense; (9) how often the debtor has sought relief under the Bankruptcy Reform Act and its predecessors;(10) the circumstances under which the debtor has contracted his debts and his demonstrated bona fides,

or lack of same, in dealings with his creditors; and (11) the burden which the plan's administration would place on the trustee. *In re Kitchens*, 702 F.2d 885, 888 (11th Cir. 1983); *In re Graffy*, 216 B.R. 888, 891 (Bankr. M.D. Fla. 1998).

Courts have also noted that debtors should not be permitted to use the bankruptcy process for a greedy or unworthy purpose. *In re Waldron*, 785 F.2d 936 (11th Cir. 1986). In *Waldron*, the debtors were financially secure but filed chapter 13 bankruptcy to reject a pre-petition option agreement. Although the bankruptcy court questioned the Waldrons' scheme, it permitted them to proceed in Chapter 13. The district court affirmed and on appeal, the Eleventh Circuit reversed explaining that

> . . .[W]ith section 1325(a)(3) Congress intended to provide bankruptcy courts with a discretionary means to preserve the bankruptcy process for its intended purpose. Accordingly, whenever a Chapter 13 petition appears to be tainted with a questionable purpose, it is incumbent upon the bankruptcy courts to examine and question the debtor's motives. If the court discovers unmistakable manifestations of bad faith, ... confirmation must be denied.
> Unmistakable manifestations of bad faith need not be based upon a finding of actual fraud, requiring proof of malice, scienter or an intent to defraud. We simply require that the bankruptcy courts preserve the integrity of the bankruptcy process by refusing to condone its abuse.
> The cornerstone of the bankruptcy courts has always been the doing of equity. The protections and forgiveness inherent in the bankruptcy laws surely require conduct consistent with the concepts of basic honesty. Good faith or basic honesty is the very antithesis of attempting to circumvent a legal obligation through a technicality of the law.

*In re Waldron* at 941.

Many courts have also held that it is not appropriate to allow debtors to shirk domestic court obligations or avoid state court contempt orders by filing bankruptcy. *See In re Bandini*, 165 B.R. 317 (Bankr. S.D Fla. 1994)(dismissing chapter 13 case when the debtor was not being pressed for payment by other creditors but filed bankruptcy to prevent or delay the consequences of his failure to pay the divorce judgment); *In re Moog*, 159 B.R. 357 (Bankr. S.D. Fla 1993)(holding

14

that individual debtor who filed with the intent of delaying payment to his wife and changing the divorce settlement he had agreed to nine months earlier was not entitled to bankruptcy protection); *In re Chadwick*, 296 B.R. 876 (Bankr. S.D. Ga. 2003)(dismissing Chapter 13 for lack of good faith upon noting that the debtor's attempts to mislead and avoid paying wife her rightful share of entitlement to property prompted a Georgia court to find him in contempt); *In re Page*, 519 B.R. 908 (Bankr. M.D.N.C. 2014)(finding debtor's chapter 13 filing to circumvent state court contempt order and avoid jail, when her persistent and wrongful behavior over a period of years had accumulated a large amount that she made no effort to pay, supported a finding of bad faith); *In re Breon*, 94 B.R. 576 (Bankr. D. Minn 1988)(denying confirmation when the debtor's motivation for filing bankruptcy was to seek relief from his ex-wife and not from his creditors in general).

Here Davis objected to confirmation on various grounds including that: the bankruptcy was not filed in good faith, the plan fails to appropriately provide for treatment of her claim, and confirmation is not appropriate to the extent that Tarver is seeking to circumvent the previous findings of the state and federal courts. It is evident that Tarver filed this bankruptcy to avoid the rulings of the Domestic Court and most notably the consequences of the Third Contempt Order. Tarver's bankruptcy petition lists only four creditors: a secured mortgage debt, two secured auto loans, and the obligation to Davis. The bankruptcy schedules, as well as the proof of claims filed in this case, reflect that Tarver was not in arrears on his mortgage or his vehicles when he filed bankruptcy and that Davis is his only unsecured creditor. Tarver is an above-median income debtor with monthly net income of $12,850.40 well exceeding his monthly expenses of $5,626.00. (Doc. 28 at 18). Thus, despite having the financial ability to abide by the Agreement and Orders of the Domestic Court he has continually elected not to do so. Instead, he reneged on his Agreement, flouted the orders of the Domestic Court, and left a decade long trail of unsuccessful litigation.

Tarver's financial situation and actions are not indicative of an "honest but unfortunate debtor." Like the debtors in *Waldron,* Tarver seems to have availed himself of the bankruptcy court solely to avoid honoring a pre-petition agreement and evading related state court orders. An assessment of the *Kitchen* factors supports finding that Tarver has not acted in good faith because: (1) even though his income greatly exceeds his expenses, he has made essentially no effort to pay the amounts due to Davis under the Divorce Decree and has purposefully accumulated substantial arrearage; (2) he has not proposed to pay all of his disposable income into the plan; (3) his living expenses include a large payment on a luxury vehicle that was purchased within thirty days of the bankruptcy; (4) his motivation for filing bankruptcy was not due to unfortunate circumstances beyond his control such as illness, loss of employment, or unexpected expenses but by his own desire to avoid paying his ex-wife agreed upon and court ordered amounts; and (5) the general manner in which he has conducted himself over the course of the past decade including, but not limited to, his flagrant disregard of the Domestic Court orders, flippant removal of state court contempt proceedings to the lower federal courts; unfounded, duplicative institution of proceedings, and failure to turnover the funds from the state court supersedeas bond. Considering the totality of the circumstances, denial of confirmation is required under 11 U.S.C. §1325(a)(3), (a)(7), and (b)(1)(B) and dismissal would be justified.

Notwithstanding the foregoing, it seems that the pendency of this case is all that is keeping Tarver free from the confines of the Elmore County jail. While this court does not wish to become a safe haven for those who callously disregard state court orders and go to extreme lengths to avoid paying their creditors, it also recognizes that the Debtor has made consistent payments to the Trustee and it may be mutually beneficial to allow the parties an opportunity to discuss a potential resolution to the pending matters. Therefore, this court will allow Tarver an opportunity

to attempt to resolve Davis' objection, file an amended plan, and seek to overcome the indicia of bad faith.

## CONCLUSION

Based on the foregoing, it is hereby ORDERED, ADJUDGED, AND DECREED as follows:

1. Davis' Objection to Confirmation is SUSTAINED;

2. Confirmation of Tarver's Amended Plan is DENIED;

3. Tarver is granted thirty days leave to attempt to resolve Davis' objection, and file an amended plan that complies with applicable bankruptcy law and demonstrates good faith;

4. Tarver's failure to timely file an amended plan will constitute grounds to dismiss this case without further notice or hearing;

5. Tarver's Objection to Davis' Claim is SUSTAINED in PART AND OVERRULED IN PART;

6. Davis' claim is ALLOWED as unsecured; and

7. Davis is granted leave to seek clarification of the Domestic Court Order and thereafter request reconsideration of the classification of her claim, if warranted.

Dated: February 13, 2023

JERRY OLDSHUE
CHIEF U.S. BANKRUPTCY JUDGE