IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

In re:

TIMOTHY WAYNE TARVER,

*Debtor*.

Case No.: 20-12219-JCO

Chapter 13

## MEMORANDUM ORDER AND OPINION

This matter came before the court on the Motion of Susan Davis ("Davis's Motion") seeking to treat her claim (ECF No. 4-1, 4-2)("Davis's Claim") as a 507(a)(1)(A) priority claim and the Response of the Debtor, Timothy Tarver, in opposition thereto. (Docs. 163, 166). Upon consideration of the record, pleadings, briefs, and exhibits, this Court finds that the Davis's Motion is due to be GRANTED for the reasons set forth below.

### JURISDICTION

This Court has jurisdiction to hear this matter pursuant to 28 U.S.C. §§157 and 1334 and the Order of Reference of the District Court dated August 25, 2015.

### PROCEDURAL BACKGROUND AND FINDINGS OF FACT

This is the third time this Court has considered Tarver's contest of Davis's Claim in one form or another. Tarver objected to Davis's Claim, sought reconsideration of this Court's ruling thereon, and now objects to Davis's Claim being treated as a priority debt. For ease of reference, a recitation of the initial facts, this Court's ruling thereon, and subsequent proceedings relevant to adjudication of this matter are set forth below.

1

*Initial Background and Findings of Fact*[1]

The Debtor, Timothy Wayne Tarver ("Tarver") filed this Chapter 13 bankruptcy on September 21, 2020. (Doc. 1). His Petition listed only four creditors: one secured by a mortgage, two secured by vehicles, and his ex-wife, Susan Davis ("Davis"), formerly known as Susan Tarver. Tarver is an above median income debtor.(Doc. 28 at 16). Tarver's regular monthly income from several sources includes: $12,796.25 in gross wages from employment, $1,300.00 in rental income, $3,389.00 in VA disability, and $1,700.00 in other retirement. (*Id.*)

Tarver was married to Davis for more than ten years. (Doc. 40-1 at 11). The two were divorced on June 11, 2012, by Final Decree of Divorce ("Divorce Decree") entered by the Circuit Court of Elmore County, Alabama ("Domestic Court").(Doc. 40-3 at 4). The Divorce Decree incorporated a Marital Settlement Agreement ("Agreement") executed by both Tarver and Davis on May 11, 2012.(*Id.*) The Agreement reflects that Tarver and Davis each had independent counsel and affixed their signatures voluntarily in the presence of a notary public. (Doc. 40-1, 13-17). The Agreement provides in part for Davis to receive " . . . 50% of [Tarver's] Air Force retirement and 50% of the disability monies . . ." (Doc 40-1 at 11 ¶14) . When Tarver failed to assign the VA benefits the Domestic Court ordered Tarver to pay half of "any amounts [he] received in lieu of disposable retired pay . . ." ("Court Ordered Payments"). (40-3 at 4)(citing No. DR-362.00, Doc. #156 ¶15.)

Tarver's subsequent refusal to remit the Court Ordered Payments to Davis prompted an avalanche of litigation, beginning with the first contempt proceeding filed by Davis in the Domestic Court. (Doc. 40-3 at 4*). Although Tarver argued that the state court lacked jurisdiction

---

[1] This section recites the relevant Procedural Background and Findings of Fact in part from this Court's Memorandum Opinion of February 13, 2023. (Doc. 138).

to divide his VA disability benefits under federal law, the Domestic Court remained resolute in its holding that Davis was entitled to the Court Ordered Payments and entered a contempt order for his failure to comply. (Doc 40-3. at 5). Upon Tarver's appeal, the Alabama Court of Civil Appeals affirmed the Domestic Court's Order and the Supreme Court of Alabama denied certiorari.[2]

Tarver's continued refusal to pay Davis the Court Ordered Payments led her to file a second petition for contempt. (*Id.*) In addition to making the same argument that he could not be required to remit his VA disability; Tarver also removed the contempt proceeding to federal court. (*Id*.) After the federal court remanded for lack of jurisdiction, Tarver instituted another federal action against Davis which was also dismissed for the same reason. (*Id.* at 4-5). The Domestic Court then held Tarver in contempt, entered a $27,853.00 judgment against him, and ordered him to make all future payments to Davis. (Doc. 40-3 at 6; Doc 50-5). Tarver appealed the contempt judgment to the Alabama Court of Civil Appeals. While that appeal was pending, Tarver's bank account was garnished by the Circuit Court of Geneva County at Davis's request. (Docs. 40-3 at 6, 50-6 at 3 ¶¶15,16). Upon Tarver's motion to stay the garnishment, the Domestic Court entered an order allowing release of the garnished funds to Tarver once he posted a supersedeas bond. (Doc. 40-3 at 7). After the Alabama Court of Civil Appeal's affirmance of the Domestic Court and the Supreme Court of Alabama's denial of certiorari, the Domestic Court ordered that Davis was entitled to receive the supersedeas bond funds. (*Id.;* Doc. 135 at 14*).*

Davis later filed a third contempt action alleging that Tarver refused to abide by the Domestic Court's Orders and that by methods of trickery and deceit Tarver had taken the supersedeas bond funds from the courthouse. (*Id.)* The day before the initial setting on the third contempt petition, Tarver filed suit against the Domestic Court Judge, the Honorable Sibley

---

[2] See *Tarver v. Tarver*, 194 So. 3d 1000 (Ala Ct. App. 2014) and *Ex parte Tarver*, 210 S. 3d 1101 (Ala. 2015).

3

Reynolds. The Eleventh Circuit Opinion dismissing Tarver's claims against Judge Reynolds stated in part that ". . . to the extent, [Tarver] seeks to relitigate the state court orders requiring him to pay half of his VA disability benefits to [Davis] he cannot do so in federal court. He has already appealed those orders in state court — twice. He cannot try again here." *Tarver v. Reynolds,* 2019 WL 3889721, at 9 (M.D. Ala. Aug. 16, 2019), aff'd, 808 F. App'x 752 (11th Cir. 2020).

After 8½ years of litigation, Tarver's attempts to renege on the Agreement and avoid the orders of the Domestic Court had proven futile. Yet on September 1, 2020, Tarver initiated a new action by filing a complaint in the U.S. District Court for the Middle District of Alabama seeking a declaratory judgment and injunctive relief ("Declaratory Judgment Action") to prevent Davis from making any claim to his disability benefits under the Divorce Decree. (Doc. 127-1). Despite the filing of the Declaratory Judgment Action, Tarver's continued failure to comply with the orders of the Domestic Court led to the issuance of a "Third Contempt Order" which states in part,

> Mr. Tarver having received all the bond funds from the Clerk when requested to return the funds and he did not return the money sent to him in error.
> Mr. Tarver last paid funds to Mrs. Tarver in September 2018.
>
> ORDERED
> 1. That Mr. Tarver has the ability to pay his agreed settlement, monthly and has failed.
> 2. That he is found to be in contempt and placed into custody, pending payment of the purger amount of $92,569.66.
> 3. Attorneys fees of $7500.00 taxed to Mr. Tarver for the attorney bringing this Contempt Action.

(Doc. 40-2).

The Third Contempt Order was the impetus for Tarver's filing of this Chapter 13 bankruptcy in which he listed Davis's claim as his only unsecured debt.(Docs.1, 18 at 31,125 at 1). Davis's proof of claim is based on the Third Contempt Order attached thereto.(ECF Claim 4-1). The administration of this bankruptcy was delayed for a ruling on Tarver's then pending Declaratory Judgment Action. Recognizing such delay could be detrimental to creditors and the

4

future feasibility of the case, this Court directed Tarver to increase his chapter 13 plan payments to the amount necessary to pay Davis's claim in the event he obtained an adverse ruling.[3] After the District Court's dismissal of Tarver's Declaratory Judgment action, this Court held a hearing on April 28, 2022, at which Tarver advised that the matter was on appeal to the Eleventh Circuit. Tarver further represented to this Court at that hearing that if his appeal was unsuccessful, he would not be seeking return of the funds paid into the court for payment of Davis's Claim. Ultimately, the Eleventh Circuit affirmed the District Court's decision and dismissed the Declaratory Judgment Action.(Doc. 135 at 5-11)(holding that it lacked jurisdiction under the *Rooker-Feldman* Doctrine).

### *This Court's Prior Ruling on Tarver's Objection to Davis's Proof of Claim*

Tarver previously objected to Davis's Claim on the grounds that the Domestic Court Orders are void and the award is a property settlement. Upon consideration of Tarver's Objection, this Court held that the *Rooker-Feldman* Doctrine ("*Rooker-Feldman*") prevents re-litigating, altering, or otherwise amending the orders of the Domestic Court. (Doc.138). The February 13, 2023 Memorandum Order and Opinion explained that: (1) *Rooker-Feldman* prevents lower federal courts from re-adjudicating matters that were previously litigated by the same parties in state court as such review may be had only by the state appellate courts and the United States Supreme Court; (2) the crux of the pending disputes between the parties had already been extensively litigated in both state and federal courts; (3) the United States District Court and the Eleventh Circuit had

---

[3] At the July 29, 2021 setting Tarver was directed to remit $2,725.00 per month based on calculations at that time. At the next setting December 2, 2021, the Debtor was directed to increase the amount to $2,785.00 per month based on the Trustee's advisement of the amount needed.

already held that Tarver's argument (that the state court's ruling violates federal law) falls within the narrow purview of *Rooker-Feldman* and prohibits his collateral attack of the Divorce Decree; and (4) *Rooker-Feldman* applies in bankruptcy proceedings. (*Id.*) (citing *Tarver v. Tarver*, 2022 WL 4372439 (11th Cir. 2022); *Tarver v. Reynolds*, 2019 WL 3889721 (M.D. Ala. Aug. 16, 2019), aff'd, 808 F. App'x 752 (11th Cir. 2020)); *see also*, *In re Wilson*, 116 F.3d 87, 90 (3d Cir.1997)("[T]he Bankruptcy Code was not intended to give litigants a second chance to challenge a state court judgment nor did it intend for the Bankruptcy Court to serve as an appellate court [for state court proceedings]"); *In re Cass*, 2019 WL 7667445(Bankr. S.D. Ala.2019)(noting that only the U.S. Supreme Court has appellate jurisdiction over judgments of state courts in civil cases); *In re Al-Sedah*, 347 B.R. 901, 904 (Bankr. N.D. Ala. 2005)("The *Rooker-Feldman* Doctrine is applicable in bankruptcy proceedings.").

As *Rooker-Feldman* precluded Tarver's attempt to attack the validity of the underlying Domestic Court Order, this Court found that Davis's claim constituted prima facie evidence of the validity and amount of the debt because it was timely filed, properly executed, and substantiated by the Domestic Court Order. However, Davis's Claim was not afforded priority treatment because the Domestic Court Order did not indicate whether the award was "in the nature of alimony, maintenance, or support." (Doc. 138 at 11). Accordingly, Tarver's Objection was sustained in part, allowing Davis's claim to be treated as a general unsecured. (*Id.*) Considering the extensive pre-petition litigation between the parties and the state court expertise and familiarity with the domestic court proceedings, this Court determined that if Davis sought to pursue priority treatment, clarification of the Third Contempt Order would be more appropriate and more efficiently handled in the Domestic Court. (*Id.* at 12)

On February 27, 2023, Tarver sought reconsideration of this Court's allowance of Davis's claim as a general unsecured claim, again contending that the underlying award from the Domestic Court is unenforceable. (Doc. 140). This Court denied Tarver's request noting that sufficient cause did not exist to amend its ruling because the same arguments were previously raised and *Rooker-Feldman* prohibits re-litigation of the state court judgment.(Doc. 143). Thereafter, Tarver's Chapter 13 plan was confirmed which presently requires payments of $2,248.00 per month with a 100% dividend to unsecured creditors. (Doc. 161).

*Davis's Motion to Reclassify Claim*

Davis now seeks to reclassify her claim to a priority claim under §507(a)(1)(A) based on an Order she obtained from the Circuit Court of Elmore County on or about November 15, 2023. (Doc. 163). Such Order states that the amount awarded to Davis under the Settlement Agreement, "shall be considered as a domestic support obligation in the nature of post-marital support." (Doc. 163-1). Tarver objects to priority treatment of Davis's claim again arguing that an award of veteran's disability is exempt. (Doc. 166).

ANALYSIS

As most commonly defined, the law-of-the-case doctrine "posits that when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case." *United States v. Siegelman*, 786 F.3d 1322, 1327 (11th Cir. 2015)(citing *Pepper v. United States*, 562 U.S. 476, 131 S.Ct. 1229, 1250, 179 L.Ed.2d 196 (2011)). Under the "law of the case" doctrine, "a court is generally precluded from reconsidering an issue that has already been decided by the same court, or a higher court in the identical case." *Thomas v. Bible*, 983 F.2d 152, 154 (9th Cir.)(cert. denied 508 U.S. 951, 113 S.Ct. 2443, 124 L.Ed.2d 661 (1993). The

purpose of the law-of-the-case doctrine is to establish efficiency, finality, and obedience within the judicial system." *Watkins v. Elmore*, 745 F. App'x 100, 103 (11th Cir. 2018).

This Court already held that *Rooker-Feldman precludes* re-litigation of Tarver's contest to the validity of the Domestic Court Order underpinning Davis's Claim. (Doc. 138). Tarver's Response to Davis's Motion as well as his numerous prior contests of the state court orders rely on the same essential claim, that the state court violated controlling federal law and acted without jurisdiction by enforcing the negotiated division of his VA disability benefits at divorce. This Court understands that is Tarver's argument. However, there is no exception to *Rooker-Feldman* for situations where a state court misapplies controlling federal law. See *Wood v. Orange Cnty.*, 715 F.2d 1543, 1547 (11th Cir. 1983)( "the federal district court's jurisdiction does not trench on the exclusive authority of the Supreme Court to review state court decisions for errors of federal law.").

It is not appropriate for Tarver to attempt to again raise the same arguments that he has already lost multiple times in this and other courts. This Court has already determined that *Rooker Feldman* precludes re-litigation of the pre-petition Domestic Court Award here. The February 13, 2023 Memorandum Order did not invite Tarver to again contest the validity of the state court orders; it simply allowed Davis to seek clarification of whether the monetary award in the Third Contempt Order was, " . . .in the nature of alimony, maintenance, or support." (Doc. 138). As Davis has now obtained an order from the Domestic Court indicating the obligation "shall be considered as a domestic support obligation in the nature of post-marital support" this Court finds consistent therewith that such claim is entitled to priority treatment pursuant to 11 U.S.C. 507(a)(1)(A).

To the extent that Tarver argues that he should not be required to pay the domestic award from his VA disability, the record reflects that he has gross income of $12,796.25, receives VA disability of $3389.00, has net income of $7224.40, and his current Chapter 13 plan payment is $2248.00. Thus, Tarver's Chapter 13 plan payment may be made from the source of his choosing. He has more than sufficient income to pay his Chapter 13 plan payment even if his VA disability was carved out as exempt; therefore, that is a non-issue.

<u>CONCLUSION</u>

Based on the above, it is hereby ORDERED, ADJUDGED, and DECREED that Davis's Motion is GRANTED and her Proof of Claim (ECF 4-2) shall be treated as a priority debt under §507(a)(1)(A).

Dated: April 2, 2024

JERRY OLDSHUE
CHIEF U.S. BANKRUPTCY JUDGE